THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK AND CANADA RAILROAD COMPANY, RESPONDENT, v. DAVID BARRETT AND OTHERS, COMMISSIONERS, ETC., OF THE TOWN OF DRESDEN, APPELLANTS. *

1867 — *chap.* 874, § 2 — *affidavit of assessor — how it may be impeached — proof of consents.*

In an action to compel the commissioners of a town to issue its bonds to a railroad company in exchange for its stock, the assessor, who made the affidavit, equired by section 2 of chapter 874 of 1867, testified that he signed the paper, ut did not make oath to it; that the contents were not stated to him, and that he did not know, and had taken no means to ascertain whether a majority of the taxpayers had consented. The affidavit purported to have been taken before one of the attorneys for the road. He testified that he read the affidavit to the assessor who swore to it; that he told the assessor that a majority of the taxpayers had consented, though he himself had no knowledge of that fact, except as he had been told by others.

*Held*, that the town was not bound by the decision of the assessor that a majority had signed the consent, and that the road could not compel the issue of the bonds.

What proofs and acknowledgments of the signatures to the consents are sufficient, considered.

---

* See *People ex rel. N. Y. and C. R. R. Co.* v. *Hutton, ante,* p. 116.

PEOPLE ex rel. N. Y. AND C. R. R. CO. v. BARRETT. 207

Third Department, May Term, 1879.

Appeal from a judgment in favor of the relator, entered upon the trial of this action by the court without a jury.

*O. F. Davis*, for the appellants.

*Tanner & Potter*, for the relator.

Learned, P. J.:

This is an action to compel, by mandamus, the defendants to issue bonds of the town of Dresden and deliver them to the relators. Judgment was given for the people on the trial, and the defendant appeals.

It must be noticed, in the outset, that this is not a question between the town and *bona fide* holders of its obligations. The controversy is simply between the company and the town. And the question is, whether there has been such a valid contract between those parties that the town should, by mandamus, be compelled to perform it.

The relators claim their rights under chapter 874, Laws of 1867. By the second section of that act the consents to the bonding of the town are to have indorsed upon, or annexed to them, an affidavit of one of the assessors of the town, showing that a majority of the taxpayers had consented. Such an affidavit appears on the consents.

The assessor who made it, being called as a witness, testified that he signed the paper, but that he did not make oath to it; that the contents were not stated to him; that he did not know whether a majority of the taxpayers had consented; that he took no means to inform himself; that he saw nobody else make any computations.

The officer before whom this affidavit, purporting to have been verified, was one of the attorneys for the relators, who was then engaged in the business of procuring the bonding of the town. He states that he read the affidavit to the assessor and swore him to it. But it appears from his own evidence that he told the assessor that a majority had consented to bond the town; and he stated this without having the assessment-roll present. The defendants offered to prove that in fact a majority did not consent; but this was excluded.

208 PEOPLE ex rel. N. Y. AND C. R. R. CO. v. BARRETT.

THIRD DEPARTMENT, MAY TERM, 1879.

Now, whatever may be the judicial or *quasi* judicial character of the assessor's act in counting up the consents, and making an affidavit that they are a majority of the taxpayers, it certainly cannot be that a company may, through its attorney, induce an assessor to make an untrue affidavit, to omit to make any examination whatever as to its truth, and to sign it on the mere statement of the attorney; and that the same company can claim that such an affidavit, so obtained, is conclusive to fasten a contract on the town for the benefit of that company. The company's attorney testifies that he only knew that the majority had signed from what some one told him. He told this to the assessor and caused the assessor to swear to this, which, according to the offer, was untrue. This attorney was carrying on for the company the whole business of procuring the bonding of the town, and the subscribing for the company's stock. And the company are now insisting that through these proceedings a contract was entered into between them and the town, which is protected by the United States Constitution. The defendants offered to prove that the affidavit, which was a necessary step in the contract, was false, having already shown that the company had obtained it to be signed by an unauthorized statement that it was true. The company knew that they were wrongfully inducing the assessor to violate his duty. They cannot take advantage of their own wrong.

Again it is plain from the second section of the statute, above mentioned, that the only matter as to which the assessor is to decide (if his act can be called a decision), is whether the taxpayers, whose names appear on the consents, represent a majority. He is, as it were, the counting officer of the vote. His affidavit does not pass upon the validity of the several consents. The statute says that the original consent and affidavit are legal evidence of the facts contained therein. And, therefore, if the original consent shows on its face that it is invalid, the assessor's affidavit does not make it valid.

The consent must be proved or acknowledged in the same manner as signatures to conveyances of real estate. The requirements for such proof or acknowledgment may be found in 1 Revised Statutes (m. p.), 758, §§ 9, 12 and 15. Now, the first of these consents purports to be witnessed by David Barrett, and

PEOPLE ex rel. N. Y. AND C. R. R. CO. v. BARRETT. 209

THIRD DEPARTMENT, MAY TERM, 1879.

the proof of execution to be taken before a notary public, the same person who was the attorney for the company in these proceedings. The certificate of proof does not mention the name of any of the persons who purport to have signed the paper ; it states that he saw each of them sign his name, when, in fact, it appears that four of them made their marks.

The second of these consents, proved and acknowledged before the same notary has, as subscribing witness, William Snody. The certificate does not mention the names of any of the persons to whom he is a witness. The consent has two columns of signatures, or what purport so to be. Some of them may be intended for names of witnesses. But it is impossible to determine which persons the attesting witness meant when he said that he saw them sign the paper.

The third of these consents is equally defective. It purports to have an acknowledgment attached. The acknowledgment does not contain the names of any person who made it. Nor does it state that the persons making the acknowledgment are known to the officer to be the individuals described in and who executed the consent. To show how imperfect these certificates are, it may be noticed that, in one case, there is what purports to be a signature of Cynthia M. Western by Samuel Western. The certificate does not show who signed the paper. Again there is a signature, Barber & Co., and another, Shelden & Benton. But nothing shows who acknowledged or signed the consent.

We must bear in mind that this proceeding is one in which the company, the relators, insist that the town has made a valid contract with them, and they ask to have the contract carried out. This is not a collateral proceeding, nor one arising between third parties, or parties having the rights of *bona fide* purchasers. It is a direct question between the company and the town whether such proceedings have been taken that the town has made a valid contract. And the town has therefore a right to show that any of the proceedings required by the statute have not been taken.

It is unnecessary to go over the cases which have been decided on similar questions. It will be found that where such acts as those of the assessor and of the county judge have been held to be conclusive, the question has arisen collaterally, and not in a

proceeding which is directly based upon and is intended to enforce the transaction alleged to be illegal and void; or else that rights of third parties, *bona fide* purchasers, have intervened.

The present case comes before us in a manner somewhat unsatisfactory. The judgment recites a verdict for the relators generally. But the case shows a verdict on one single question only, and there are no other findings. We cannot, therefore, say what was decided by court or jury. And it seems to be unnecessary to examine the other questions in the case.

The judgment should be reversed, and a new trial granted, costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment reversed; new trial granted; costs to abide event.